IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JAMES HARDWICK, | : |
| Plaintiff, | : |
| v. | : Civil Action No. 17-668-RGA |
| CONNECTIONS COMMUNITY SUPPORT PROGRAMS, INC., | : |
| Defendant. | : |

James Hardwick, James T. Vaughn Correctional Center, Smyrna, Delaware.
Pro Se Plaintiff.

Dana Spring Monzo and Roopa Sabesan, White & Williams, Wilmington, Delaware.
Counsel for Defendant.

**MEMORANDUM OPINION**

February 6, 2020
Wilmington, Delaware

ANDREWS, U.S. District Judge:

Plaintiff James Hardwick, an inmate at the James T. Vaughn Correctional Center in Smyrna, Delaware, filed this action pursuant to 42 U.S.C. § 1983.[1] (D.I. 2, 8). Defendant Connections Community Support Programs is the contracted medical provider for the prison. Plaintiff appears *pro se* and has been granted leave to proceed *in forma pauperis*. (D.I. 6). Before the Court are Plaintiff's motion for reconsideration, motions to compel, and motion to disqualify judge (D.I. 56, 76, 77, D.I. 80) and Defendant's motion for summary judgment (D.I. 58). Briefing is complete.

I.  **BACKGROUND**

The record[2] reflects that on June 4, 2015, Plaintiff submitted a sick call for pain in his left shoulder after he felt something "pop" while lifting weights. (D.I. 60 at 46, 47, 335). The sick call slip states that Plaintiff possibly injured his rotator cuff. (*Id.* at 335). On June 5, 2015, a nurse triaged the sick call slip and scheduled Plaintiff for a regular sick call. (*Id.* at 64, 335). On June 6, 2015, Plaintiff was seen by a registered nurse, who examined him, prescribed Ibuprofen, and instructed Plaintiff to rest. (*Id.* at 47).

On June 13, 2015, Plaintiff submitted a grievance complaining of lack of medical care and stated that when he was seen on June 6, 2015, he was told he would be seen by a physician on the following Tuesday. (*Id.* at 109). On July 20, 2015, Plaintiff

---

[1] When bringing a § 1983 claim, a plaintiff must allege that some person has deprived him of a federal right, and the person who caused the deprivation acted under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

[2] The reverse chronological narrative of Plaintiff's injury and treatment from June 2015 through August 2016 is in the record at D.I. 60 at 30-48.

1

presented for follow-up, complained of pain, and medical personnel scheduled a left shoulder x-ray. (*Id.* at 46). Plaintiff was seen again on July 30, 2015 with continued complaints of left shoulder pain. (*Id.*). The x-ray, taken on August 4, 2015, revealed no fracture, and its findings were reviewed with Plaintiff on August 28, 2015. (*Id.* at 45). Plaintiff was also examined on August 28, 2015, when he expressed concerns that he had torn something that needed repair, reported negative pain relief, and denied any radiation or tingling in his left arm. (*Id.*). Plaintiff had a mildly decreased range of motion and was able to lift the left arm to shoulder level but with pain. (*Id.*). Medical personnel determined that surgical intervention was not currently indicated despite Plaintiff's request. (*Id.*). Plaintiff was prescribed pain medication and scheduled for a "physical therapy consult for strengthening and ROM [range of motion]." (*Id.* at 44-45).

Plaintiff was evaluated for physical therapy on September 3, 2015. (*Id.* at 44). He was given a daily home program and scheduled for weekly follow-up physical therapy visits. (*Id.*). Plaintiff received physical therapy through October 8, 2015, when he was discharged and referred back to the provider for follow-up. (*Id.* at 42-44). Physical therapy notes indicate that Plaintiff was not responding to physical therapy and "almost certainly there is a moderate to large rotator cuff tear" that an MRI would confirm. (*Id.* at 42-43). On November 23, 2015, Plaintiff submitted a grievance and asked to see an outside orthopedic specialist. (*Id.* at 114-15).

On December 10, 2015, Plaintiff was examined and evaluated. (*Id.* at 42). Medical personnel recommended Plaintiff undergo an MRI and the consult was approved on December 21, 2015. (*Id.*). On January 15, 2016, Plaintiff was transported

2

to Mid-Delaware Imaging for an off-site MRI of the left shoulder. (*Id.* at 41). The MRI confirmed the presence of a tear in Plaintiff's supraspinatus and infraspinatus tendons. (*Id.*). On February 14, 2016, Plaintiff submitted a grievance and asked to be seen by an outside orthopedic specialist. (*Id.* at 117-18). Plaintiff was scheduled for an orthopedic consult and, on February 26, 2016, evaluated by orthopedist Dr. Richard DuShuttle who recommended Plaintiff undergo an arthroscopic rotator cuff repair. (D.I. 60 at Ex. A at 40-41; D.I. 61 at 173-74). Dr. DuShuttle also prescribed a shoulder abduction sling and a pillow to elevate for pain. (D.I. 61 at 174, 181). On March 4, 2016, Medical staff faxed the Warden a medical memorandum request to security for the items prescribed by Dr. DuShuttle. (*Id.* at 477).

Dr. DuShuttle performed left shoulder arthroscopy with open decompression on Plaintiff at Dover SurgiCenter on March 31, 2016. (D.I. 60 at 39-40; D.I. 61 at 184-85). Following the surgery, Plaintiff returned to the prison infirmary for monitoring and was discharged from the infirmary the next day. (*Id.* at 38-39). On April 4, 2016, Plaintiff submitted a grievance and asked to receive the pain medication prescribed by Dr. DuShuttle following the surgery. (*Id.* at 120). In the grievance Plaintiff states that he was prescribed both Percocet and Naproxen, but he only received Naproxen which did not "handle" the intense pain. (*Id.*).

Plaintiff saw Dr. DuShuttle for follow-up care on April 6 and 13, 2016. (*Id.* 37-38). In the interim, he was seen by prison medical personal (*Id.* at 38). Plaintiff had complaints of pain on April 13, 2016, and was prescribed pain medication and muscle relaxants. (D.I. 60 at 37; D.I. 61 at 184-85). In the weeks that followed, Plaintiff was

routinely seen by Connections staff for pain management and prescribed Tramadol and Ibuprofen. (D.I. 60 at 36). By May 2, 2016, Plaintiff asked to stop the pain medication and muscle relaxants and indicated that Ibuprofen was "enough for treatment." (*Id*. at 35). He was seen by Medical personnel several times during May. (*Id*. at 34).

Medical records dated May 4, 2016, indicate that Plaintiff returned from an off-site visit with an order for physical therapy and that his exam was "unremarkable." (*Id*. at 35). Beginning June 13, 2016, Plaintiff received physical therapy sessions at Christiana Care Rehab Center for approximately three months, two times a week. (*Id*. at Ex. A at 30-34). In late August 2016, Plaintiff was discharged from physical therapy with his goals met. (*Id*. at 30). Upon discharge, Plaintiff had minimal pain. (*Id*.). Since then, Plaintiff has complained of some shoulder pain when seen by Medical staff, and he has been provided pain medication. (*Id*. at 26-28).

## II.     MOTION FOR RECONSIDERATION

On March 25, 2019, the Court entered a memorandum and order that denied Plaintiff's request for counsel, motion for issuance of subpoenas, motion to compel, and motion for an order of contempt. (D.I. 54, D.I. 55). On April 3, 2019, Plaintiff filed a "response to the Court's denial of corrective action against Connections" which seems to be a motion for reconsideration of that portion of the memorandum and order denying Plaintiff's motions to compel. (*See* D.I. 56).

The motion indicates that the discovery deadline expired on December 17, 2018, yet Connections continued to make discovery requests. Plaintiff also complains that Connections failed to make initial disclosures as required Fed. R. Civ. P. 26(a)(1). (D.I.

56). However, cases like this, with a *pro se* incarcerated individual, are exempt from the initial discovery requirement. *See* Fed. R. Civ. P. 26(a)(1)(B)(iv). Plaintiff's addendum references his request for counsel and asks the Court to order Connections to comply with a subpoena and to respond to discovery. (D.I. 57).

The purpose of a motion for reconsideration is to "correct manifest errors of law or fact or to present newly discovered evidence." *Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999). "A proper Rule 59(e) motion . . . must rely on one of three grounds: (1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error of law or [to] prevent manifest injustice." *Lazaridis v. Wehmer*, 591 F.3d 666, 669 (3d Cir. 2010).

The Court has reviewed the filings and the relevant memorandum and order. The memorandum pointed Plaintiff to the Federal Rules of Civil Procedure when seeking discovery from a party (D.I. 54 at 2-3), and observed that Plaintiff did not indicate what documents he sought through discovery (*id.*at 3). After Plaintiff filed the motion for reconsideration, the Court on May 2, 2019, extended the discovery deadline until July 1, 2019 (*see* D.I. 65), giving Plaintiff sufficient time to seek discovery, and mooting any complaint that he did not have enough time. The docket does not reflect any effort by Plaintiff to obtain any discovery between May 2 and July 1, 2019.

With regard to denial of the request for counsel, while Plaintiff's medical condition could be considered complex, the Eighth Amendment medical issues raised in the complaint are not. Moreover, Plaintiff has ably represented himself in this case.

In light of the foregoing, the Court finds that Plaintiff has failed to demonstrate any of the grounds necessary to warrant a reconsideration of the relevant memorandum and order. Plaintiff's motion for reconsideration will be denied.

## III. MOTIONS TO COMPEL

On September 19, 2019 and October 30, 2019, Plaintiff filed motions to compel Defendant to respond to his discovery requests. (D.I. 76, 77). As I indicated above, discovery was to be completed on or before July 1, 2019. The discovery deadline was extended upon Plaintiff's request so that he could conduct additional discovery and file a response to the April 17, 2019 motion for summary judgment filed by Connections. (See D.I. 62, 65). The first motion to compel attaches various subpoenas which appear to have been issued contemporaneously with the filing of the motion, which is what Plaintiff indicated in various places on the subpoenas. (See D.I. 76 at 7, 11, 15, 19, 23, 27).[3] The other motion to compel (D.I. 77) does not specifically identify what Plaintiff is seeking to compel, but it is reasonable to assume Plaintiff is referring to requests for admissions and interrogatories directed to Defendant on July 26, 2019 and August 2, 2019, well after the July 1, 2019 deadline to complete discovery. (See D.I. 70-73).

Courts have determined that "[m]otions to compel filed after the discovery deadline are untimely and prohibited, absent good cause." *Zimmerman v. Edwin A. Abrahamsen & Associates,* 2017 WL 3701827, at *4 (M.D. Pa. Aug. 28, 2017). Discovery was extended upon Plaintiff's request. Plaintiff does not indicate why he only

---

[3] Two of the subpoenas appear to be subpoenas previously served by Defendant. (*See* D.I. 45, 49).

6

sought discovery from Defendant well after the deadline to complete discovery.  Nor did he seek additional time to do so.  Any discovery disputes should have been raised prior to the close of discovery, or at least should have been based on timely-filed discovery requests.[4]

The motions to compel will be denied.

## IV.    MOTION FOR RECUSAL

Plaintiff seeks my recusal under 28 U.S.C. § 144.  (*See* D.I. 80, 81).  He claims "a factual series of events" show a pattern of my personal bias or prejudice against him.  (D.I. 80 at 1).  Section 144 provides, "Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein."  Plaintiff submitted an affidavit in support of his motion.

It is the responsibility of the district judge against whom an affidavit is filed to assess the legal sufficiency of the affidavit.  *United States v. Townsend*, 478 F.2d 1072, 1073 (3d Cir. 1973) (stating that the mere filing of an affidavit "does not automatically disqualify a judge").  The United States Court of Appeals for the Third Circuit has held that the challenged judge must determine only the sufficiency of the affidavit, not the truth of the assertions.  *Mims v. Shapp*, 541 F.2d 415, 417 (3d Cir.1976).  An affidavit is

---

[4] The Court notes that Plaintiff's opposition to Defendant's motion for summary judgment contains approximately 300 pages of exhibits including grievances, sick call slips, and medical records.  (*See* D.I. 66).

7

legally sufficient if the facts alleged therein: (1) are material and stated with particularity, (2) would convince a reasonable person that a bias exists, and (3) evince bias that is personal, as opposed to judicial, in nature. *United States v. Thompson*, 483 F.2d 527, 528 (3d Cir. 1973).

Here, it is evident that Plaintiff's allegations of bias consist of subjective conclusions and disagreements with my legal rulings (or, lack of rulings) in this case. *See Jones v. Pittsburgh Nat'l Corp.*, 899 F.2d 1350, 1356 (3d Cir. 1990) (holding that, to be legally sufficient, an affidavit must contain more than mere conclusory allegations); *see also Cooney v. Booth*, 262 F. Supp. 2d 494, 502 (E.D. Pa. 2003) (holding that opinions and conclusions based upon suspicion, conjecture, and speculation are legally insufficient to warrant recusal). Moreover, the Third Circuit has repeatedly observed that "a party's displeasure with legal rulings does not form an adequate basis for recusal." *Securacomm Consulting, Inc. v. Securacom Inc.*, 224 F.3d 273, 278 (3d Cir. 2000); *accord, Hukman v. American Airlines, Inc.*, 2019 WL 7369196, at *6 (3d Cir. Dec. 31, 2019). The allegation that some of my legal rulings were in error can be raised on appeal.

Plaintiff has not met the requirements of § 144 and, therefore, his motion for my recusal under 28 U.S.C. § 144 will be denied.

## V. MOTION FOR SUMMARY JUDGMENT

### A. Standards of Law

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(a). When determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). A dispute is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 247-49 (1986).

### B. Discussion

Defendant moves for summary judgment on the grounds that Plaintiff has failed to establish an Eighth Amendment claim of deliberate indifference by Connections or its staff or that a constitutionally defective policy or practice that caused his alleged injuries.[5] (D.I. 58; D.I. 59). Plaintiff opposes the motion and argues there are facts in dispute that should be decided by a jury.[6]

The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care. *Estelle v.*

---

[5] It appears that Defendant submitted Plaintiff's entire medical record of more than 1,000 pages. Most of the records are plainly irrelevant. For example, there are records for time-frames other than the relevant time in 2015 and 2016, dental records, mental health records, sleep study records, lab results and segregation records, none of which are relevant to the issue of Plaintiff's shoulder injury and the medical care he was provided to treat the injury. The Parties, as well as the Court, are better served by the submission of only relevant or arguably relevant material.

[6] Plaintiff repeatedly argues that Defendant did not file its summary judgment motion at the right time. (*E.g.*, D.I. 80 at 2). But I entered a scheduling order providing that such motions be filed no later than April 17, 2019 (D.I. 34), and Defendant filed its summary judgment motion on April 17, 2019.

9

*Gamble*, 429 U.S. 97, 103-05 (1976). In order to set forth a cognizable claim, an inmate must allege (i) a serious medical need and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need. *Id.* at 104; *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). A prison official is deliberately indifferent if he or she knows that a prisoner faces a substantial risk of serious harm and fails to take reasonable steps to avoid the harm. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

A prison official may manifest deliberate indifference by "intentionally denying or delaying access to medical care." *Estelle v. Gamble*, 429 U.S. at 104-05. "Unlike the deliberate indifference prong of an adequacy of care claim (which involves both an objective and subjective inquiry), the deliberate indifference prong of a delay or denial of medical treatment claim involves only one subjective inquiry—since there is no presumption that the defendant acted properly, it lacks the objective, propriety of medical treatment, prong of an adequacy of care claim." *Pearson v. Prison Health Serv.*, 850 F.3d 526, 537 (3d Cir. 2017). "Absent that objective inquiry, extrinsic proof is not necessary for the jury to find deliberate indifference in a delay or denial of medical treatment claim." *Id.* "All that is needed is for the surrounding circumstances to be sufficient to permit a reasonable jury to find that the delay or denial was motivated by non-medical factors." *Id.*

When a plaintiff relies upon a theory of respondeat superior to hold a corporation such as Connections liable, he must allege a policy or custom that demonstrates such deliberate indifference. *Sample v. Diecks*, 885 F.2d 1099, 1110 (3d Cir. 1989); *Miller v. Correctional Med. Sys., Inc.*, 802 F. Supp. 1126, 1132 (D. Del. 1992). To establish that

10

Defendant is directly liable for the constitutional violations, Plaintiff "must provide evidence that there was a relevant [Connections] policy or custom, and that the policy caused the constitutional violation[s] [plaintiff] allege[s]." *Natale v. Camden Cty. Facility*, 318 F.3d 575, 584 (3d Cir. 2003) (corporation under contract with the state cannot be held liable for the acts of its employees and agents under theories of respondeat superior or vicarious liability). Assuming the acts of Defendant's employee have violated a person's constitutional rights, those acts may be deemed the result of a policy or custom of the entity for whom the employee works, thereby rendering the entity liable under § 1983, where "the inadequacy of existing practice [is] so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need. *See id.*

"'Policy is made when a decisionmaker possessing final authority to establish . . . policy with respect to the action issues an official proclamation, policy or edict.'" *Id.*. "Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." *Miller v. Corr. Med. Sys., Inc.*, 802 F. Supp. at 1132.

Plaintiff argues that Defendant did not follow standard steps for his injury, did not provide enough pain medication, delayed in providing treatment because ten months passed before he saw Dr. DuShuttle, and was deliberately indifferent in providing him care.

11

There is no dispute that Plaintiff sustained an injury that required treatment. The undisputed evidence of record is that Plaintiff received continuous medical treatment and care for his medical condition through treatment both inside and outside the prison, referrals and treatment with outside medical personnel including physical therapy, surgery, and follow-up care, as well as regular medical care within the prison.

Plaintiff's delay-in-care claim rests upon the fact that that he did not see Dr. DuShuttle for about nine months after his injury and about three months (Nov. 23, 2015 to Feb. 26, 2016) after his grievance. However, the record reflects that after the injury Plaintiff was provided conservative treatment, including not only anti-inflammatory drugs but also a course of physical therapy. When that did not prove fruitful, Plaintiff was given an MRI, referred to Dr. DuShuttle and underwent surgery. Plaintiff complains that he did not receive a shoulder sling or supportive pillow as ordered by Dr. DuShuttle. The record reflects, however, that due to security concerns, Medical staff sent a request to the Warden to receive permission to provide the items to Plaintiff. In other words, the prison administration had the final say on whether those items passed security muster. Connections is not responsible for security decisions. Finally, after surgery, Plaintiff received another round of physical therapy and his records indicate he was provided with pain medication, albeit not always the drug of his choice.

There is a distinction between claims that treatment was delayed or denied and claims that treatment occurred but was inadequate. *Pearson*, 850 F.3d at 535. The Eighth Amendment's proscription against cruel and unusual punishment mandates that incarcerated offenders receive adequate medical care. However, "a prisoner does not

have the right to choose a specific form of medical treatment." *Lasko v. Watts*, 373 F. App'x. 196, 203 (3d Cir. 2010) (quoting *Harrison v. Barkley*, 219 F.3d 132, 138-40 (2d Cir. 2000)). In addition, there is a presumption that treatment is proper, absent evidence that there was a violation in the standard of care. *Pearson*, 850 F.3d at 535. Here, there is no evidence that medical personnel violated any standard of care. Moreover, the treatment was reasonable. No reasonable jury could find an Eighth Amendment violation based on a claim that medical personal were deliberately indifferent to his serious medical needs in treating Plaintiff or through delay or denial of medical care.

Nor does the record establish a defective policy, custom or practice that caused an injury to Plaintiff. To the contrary, the record evidence is that Plaintiff has consistently been provided medical care and treatment for his medical condition. Given that Plaintiff failed to produce evidence of an Eighth Amendment violation or that a violation was caused by Connections' policy or custom, summary judgment is proper on behalf of Connections. *See Palakovic v. Wetzel,* 854 F.3d 209, 232 (3d Cir. 2017); *see also Fields v. Delaware Dep't of Corr.*, 787 F. App'x 796, 799 (3d Cir. 2019) (granting summary judgment proper for corporate medical provider where there is no evidence of an Eighth Amendment violation and no evidence of a violation caused by the medical provider's policy or custom).

No reasonable jury could find in favor of Plaintiff. Therefore, the Court will grant Defendant's motion for summary judgment.

## VI.    CONCLUSION

For the above reasons, the Court will: (1) deny Plaintiff's motion for reconsideration, motions to compel, and motion to disqualify judge (D.I. 56, 76, 77, 80); and (2) grant Defendant's motion for summary judgment (D.I. 58).

An appropriate order will be entered.